UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL LAMONT JONES,<br><br>            Petitioner,<br><br>   v .<br><br>KELLY HARRINGTON,<br>Warden,<br><br>            Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 09-5636 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On July 31, 2009, Carl Lamont Jones ("petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") with a supporting memorandum ("Petition Memo"). Petitioner challenges a conviction in the Los Angeles County Superior Court on the following remaining ground:[1] The trial court erroneously permitted the prosecution to impeach defense witness Brandon Mead with the fact that Mead was in custody and facing unrelated charges, and thereby violated state

---

[1] On October 28, 2009, this Court granted petitioner's October 26, 2009 request to withdraw the unexhausted second and third claims in the Petition, ordered such claims stricken, and directed this action to proceed on petitioner's sole remaining exhausted claim. (Dkt. 15, 16).

1

law and deprived petitioner of due process and a fair trial.  (Petition at 5; Petition Memo at 9-15).

On January 22, 2010, respondent filed an Answer and a supporting memorandum ("Answer").[2]  On April 16, 2010, petitioner filed a Reply. ("Reply").[3]

The parties have consented to proceed before a United States Magistrate Judge.  (Dkt. 7, 10, 14).

For the reasons stated below, the Petition is denied, and this action is dismissed with prejudice.

## II.   PROCEDURAL BACKGROUND

On February 23, 2007, a Los Angeles County Superior Court jury found petitioner guilty of dissuading a witness, Felicia Mead, from reporting a crime (count 3) and assault upon Felicia Mead, by means likely to produce great bodily injury (count 7).  (CT 171, 175).[4]  The jury further found that petitioner personally used a firearm in dissuading Felicia Mead, and that he personally inflicted great bodily injury upon her in the commission of the assault.  (CT 171, 175).  On April 20, 2007, petitioner admitted that he had suffered a prior conviction that qualified as a strike under California's Three Strikes law.  (CT 183-84).  On August 9, 2007, the trial court sentenced petitioner to a total of thirty-three (33) years to life in state prison.  (CT 250-51).

---

[2] Respondent also relies on multiple documents lodged on October 6, 2009 and January 22, 2010 ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

[3] Petitioner's Reply is entitled "Response to Respondent's Answer on Writ of Habeas Corpus by State Prisoner."

[4] The jury found petitioner not guilty of making criminal threats (count 2), forcible oral copulation (counts 4-5), forcible rape (count 6), and assault with a firearm (count 8).  (CT 170, 172-74, 176).  Although petitioner was at one point also charged with inflicting corporal injury upon a spouse (former count 1), the Amended Information on which petitioner was tried, did not include such count or any other count enumerated as count 1.  (CT 91-98, 115-22).

On September 25, 2008, the California Court of Appeal determined that evidence regarding Brandon Mead's pending charges was inadmissible, but that petitioner had forfeited the claim of evidentiary error by failing to object to the testimony in the trial court. (Lodged Doc. B at 6-7). On December 10, 2008, the California Supreme Court denied review without comment. (Lodged Doc. D).

### III.   FACTS[5]

At about 12:30 a.m. on August 13, 2005, Los Angeles Police Department ("LAPD") Officer Mynerva Gramillo and her partner went to the apartment of Felicia Mead ("Felicia") in response to a domestic violence call. Gramillo noticed a broken window and a brick alongside it. Felicia opened the door and quietly stated, "He's in there," as she pointed toward the back of the apartment. Felicia appeared frightened and nervous, and the right side of her face was swollen and red. Petitioner stepped out of the bathroom, and the police officers handcuffed him.

Felicia told Officer Gramillo that she had recently broken up with petitioner. Felicia said that petitioner knocked on the apartment door, but she did not answer. The front window then broke. Felicia told Officer Gramillo that she waited awhile, then opened the door while holding her gun in her hand. Petitioner grabbed Felicia's arm and took the gun away from her, then hit her in the face with his fist approximately five times. Felicia told Officer Gramillo that petitioner placed the barrel of the gun against her head and asked if she wanted him to shoot her, then threatened to kill Felicia's children if she called the police. Officer Gramillo retrieved Felicia's purse containing a loaded handgun from the couch in Felicia's apartment. Paramedics treated Felicia at the scene, then transported her
///

---

[5] The facts set forth are drawn from the California Court of Appeal's decision on direct appeal. (Lodged Doc. B at 2-5).

to a hospital. The police took photographs of Felicia's injuries that were shown at trial.

Felicia testified that she dated petitioner during the summer of 2005. She gave him keys to the garage and back door of her apartment. A few days after August 6, 2005, Felicia told petitioner she wanted to break up with him, and he seemingly agreed. Felicia changed the locks on her garage and back door.

At about 10:00 p.m. on August 12, 2005, petitioner banged on the back door to her apartment, said he could not believe she had changed the lock, and demanded that she open the door. She then heard banging on the front door and a brick came through the front window. She retrieved her gun and, after waiting a few minutes, opened the front door to see if petitioner was gone. He came toward her, took the gun away from her, and struck her face, throwing her to the ground. A neighbor Felicia knew only as "Rain Water" or "Rain Man" ran in and attempted to wrestle the gun away from petitioner. The neighbor left, and petitioner repeatedly punched Felicia in her right eye. Petitioner pointed the gun at Felicia's head and said he should shoot her. He put a package of frozen hot dogs on Felicia's face and ordered her to orally copulate him. She complied, then engaged in intercourse with him. When the police came to the door, petitioner stopped and directed Felicia to tell the police that they had just argued and he was in the shower. Petitioner gave Felicia the gun and went into the bathroom. Felicia let the police in and told them that petitioner was in the bathroom and there was a gun on the couch.

Felicia was dizzy and in severe pain when she spoke to the police officers and at the hospital. She did not tell the police or hospital staff about the sexual assault because at the time she did not consider it important. Her nose and the bone around her right eye were broken. She suffered double vision in her right eye for about a week and for months she experienced headaches and constant pain in her nose and under her right eye.

4

Felicia testified that she told her brother Brandon that petitioner assaulted her.

Brandon Mead ("Brandon") testified on behalf of petitioner. Brandon stated that he had a good relationship with Felicia, and had met petitioner on one occasion in the winter of 2005 or 2006, when Felicia brought him to their mother's house. On August 12, 2005, he was at Felicia's apartment and saw her arguing with her then-boyfriend Jason. When it appeared that Jason might become physically aggressive with Felicia, Brandon stood up, which seemingly caused the argument to die down. Brandon then left. On cross-examination, Brandon testified, without objection, that he was in custody, and awaiting trial on two charges of attempted murder.

In January 2006, Brandon had a conversation with Felicia about the incident giving rise to the charges. Felicia said she had been hit after Brandon left on August 12, 2005. Brandon asked Felicia if it was petitioner who struck her, and she said it was not. Brandon further testified that Felicia sometimes lied. She falsely told the police that Brandon had stolen her car. The police arrested Brandon, but he "beat the case." He was angry with Felicia at first, but he forgave her because she did not know who took her car. Brandon denied that he had been placed in a cell with petitioner and denied telling any member of his family that he had been injured in a fight with petitioner.

Petitioner testified that he and Felicia dated for two or three months, but he broke up with her on August 2, 2005, because she was too jealous and controlling. When he told Felicia he wanted to break up with her, she threatened him.

On August 12, 2005, petitioner telephoned Felicia and arranged to come over and pick up his things from her apartment. He arrived around 10:00 p.m. Two men approached him outside Felicia's apartment and demanded to know why he was there. One of the men swung at petitioner and shoved him against the window next to Felicia's front door. The window broke. Petitioner fought with

5

the men, who struck his face and side.  He was dazed, and he felt for Felicia's screen door, which was open just a crack.  He entered Felicia's apartment, and immediately saw that she was pointing a gun at him.  Felicia was hysterical and crying.  She accused him of leaving her for "that bitch" and threatened to shoot him.  The men outside were yelling and demanding that Felicia "let that man out of there."  Petitioner tried to calm Felicia, then ran into the bathroom to wash the wounds on his face.  Petitioner came out of the bathroom with his hands up when he heard a male police officer whisper, "He's in there."  Petitioner told the police that the men outside had attacked him, and he pointed out his assailants, but the police ignored him.  Petitioner denied that he ever struck Felicia.

On cross-examination, petitioner testified that four men attacked him outside Felicia's apartment, and they beat and kicked him.  Petitioner explained that he knew the people who came into Felicia's apartment were police officers because he was watching the shadows that came under the bathroom door and the people moved like police officers.  He further explained that he heard the officer whisper above the sound of the water he was running, because he had his ear up against the bathroom door.  Petitioner admitted that he gave a written statement to the police in which he said three men attacked him outside his "woman[']s house," that Felicia was angry with him because he had not come to her apartment for five days, and that he did not hit Felicia, but she was "in the way."  Petitioner further admitted that in his written statement, he had failed to mention that Felicia had pointed a gun at him, that the men outside the apartment beat him, and that after the officers arrested him, he saw the men who attacked him.  Petitioner also admitted that he had previously been convicted of three counts of robbery and two counts of attempted robbery.

///

///

///

## IV. DISCUSSION

### A. Petitioner is Not Entitled to Habeas Relief Based upon the Trial Court's Admission of Evidence Regarding Brandon's Custodial Status and Pending Charges

Petitioner contends that the trial court erroneously permitted the prosecution to impeach defense witness Brandon Mead with the fact that such witness was in custody and facing unrelated charges, and thereby violated state law and deprived petitioner of due process and a fair trial. He thus essentially objects to the admission of evidence regarding Brandon's custodial status and pending charges. Petitioner is not entitled to federal habeas relief on this claim.

#### 1. Additional Pertinent Facts

At the time of petitioner's trial, Brandon was in custody awaiting trial on unrelated charges. (RT 1533-38, 1815-16). Before Brandon testified, Brandon's attorney (*not* petitioner's counsel) informed the trial court that she would advise Brandon to assert his privilege against self-incrimination if the prosecutor attempted to impeach him with the "facts of his pending case," in which he was "charged with two counts of attempted murder with gun and gang allegations." (RT 1535). The trial court stated that the prosecutor would be allowed to ask Brandon whether he had charges pending against him and what the charges were, but could not ask about the facts of the case. (RT 1536-37). Petitioner did not object. (RT 1533-38, 1815-16). As noted above, on cross-examination, Brandon testified, without objection, that he was in custody, awaiting trial on two charges of attempted murder. (RT 1815-16). The prosecutor did not ask petitioner about street gang or firearm allegations.[6] (RT 1815-28).

---

[6] Petitioner incorrectly contends that the street gang and gun use allegations were admitted into evidence and that the defense objected to the admission of the evidence in issue. (Petition Memo at 9).

7

### 2. Petitioner's Claim Is Procedurally Barred

Respondent argues that petitioner is not entitled to federal habeas relief because his claim has been procedurally defaulted. (Answer at 8-10). Petitioner does not respond to this contention in his Reply. As discussed below, this Court finds that petitioner's claim is procedurally barred.

#### a. Pertinent Law

Federal courts will not generally review a question of federal law decided by a state court if its decision clearly and expressly rests on a state law ground that is independent of the federal question and adequate to support the judgment. King v. LaMarque, 464 F.3d 963, 965 (9th Cir. 2006) (federal courts generally will not review federal claim decided by state court if decision rests on independent and adequate state law ground) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)); Harris v. Reed, 489 U.S. 255, 262-263 (1989) (procedural bar applies when state court clearly and expressly states that its judgment rests on state procedural bar). To be "independent," the state law ground for decision must not be "interwoven with the federal law." Coleman, 501 U.S. at 733 (quoting Michigan v. Long, 463 U.S. 1032, 1040-1041 (1983)). To be "adequate," the state's legal grounds for its decision must be firmly established and consistently applied. King, 464 F.3d at 965 (citing Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.), cert. denied, 540 U.S. 938 (2003)). To be "firmly established or consistently applied," a rule must be clear and certain. Id. at 965-66 (citing Melendez v. Pliler, 288 F.3d 1120, 1124 (9th Cir. 2002) (citations omitted)).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993) (citing Coleman, 501 U.S. 722).

///

### b. Analysis

First, the state courts' rejection of petitioner's claim has been stated "clearly and expressly." The California Court of Appeal and the California Supreme Court were presented with petitioner's claim that the trial court's admission of the evidence in issue was improper under California state law and deprived petitioner of his federal constitutional rights to due process and a fair trial. (Lodged Doc. C at 13; Lodged Doc. 3 at 18). The California Court of Appeal unambiguously, clearly and expressly rejected the claim on procedural grounds in a reasoned decision, stating: "[Petitioner forfeited his claim of evidentiary error by failing to object to the proposed or actual testimony in the trial court. (People v. Williams (1997) 16 Cal. 4th 153, 208 [,][cert. denied, 522 U.S. 1150 (1998)].)." (Lodged Doc. B at 7). The California Supreme Court denied review without comment. (Lodged Doc. D). By its "silent order" denying review of the Court of Appeal's decision, the California Supreme Court is presumed to have denied petitioner's claim for the same reason stated in the opinion of the Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").[7]

Second, California's contemporaneous objection rule is adequate as the rule is clear and California courts have consistently applied it. See Melendez, 288 F.3d at 1125 ("We held more than twenty years ago that the rule is consistently applied

---

[7] As the Court of Appeal and the California Supreme Court were presented with petitioner's federal claim, this case is distinct from Hunter v. Aispuro, 982 F.2d 344, 347-48 (1992), cert. denied, 510 U.S. 887 (1993), in which the Ninth Circuit was unable to apply the Ylst v. Nunnemaker presumption that the California Supreme Court's silent rejection of a claim rested upon the same ground as the opinion of the Court of Appeal, and instead deemed the silent denial to be a determination on the merits which was not subject to a procedural bar on federal habeas review.

9

when a party has failed to make *any* objection to the admission of evidence.") (citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir.1981)) (emphasis original); see also Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (jury instruction claim procedurally barred by virtue of California Court of Appeal's decision finding that claim waived, where petitioner failed to establish that California's contemporary objection rule unclear, inconsistently applied or not well-established), appeal after remand, 542 F.3d 692 (9th Cir. 2008); Vansickel v. White, 166 F.3d 953, 957-958 (9th Cir.) (recognizing and applying California's contemporaneous objection rule in affirming denial of a federal petition on the ground of procedural default), cert. denied, 528 U.S. 965 (1999); Bonin v. Calderon, 59 F.3d 815, 842-843 (9th Cir. 1995) (sustaining state court's finding of procedural default where defendant failed to raise properly any objection during trial), cert. denied, 516 U.S. 1051 (1996).

Third, California's contemporaneous objection rule is applied independent of federal law. People v. Williams, 16 Cal.4th at 208; see Vansickel, 166 F.3d at 957-958; Bonin, 59 F.3d at 842-843.

Finally, petitioner fails to demonstrate that the Court can consider his claim. He does not argue that California's contemporary objection rule is unclear, inconsistently applied or not well-established, either as a general matter or as applied to him. See Paulino, 371 F.3d at 1092-93. Nor does he suggest that there was cause for his procedural default, actual prejudice, or that a fundamental miscarriage of justice would result absent review.[8] Id.

---

[8] Although petitioner argued on direct appeal that his trial counsel was ineffective in failing to object to the introduction of the evidence in issue, the California courts rejected such claim on its merits. (Lodged Docs. B-D, 3). Petitioner has not raised an ineffective assistance of counsel claim in the Petition and has not otherwise alleged in this action that his trial counsel was ineffective. To the extent the Petition generally argues that the admission of the evidence in issue resulted in a miscarriage of justice (Petition Memo at 14), this Court, based upon a *de novo* review of the record, finds that no fundamental miscarriage of justice would result absent review.

In sum, petitioner is not entitled to federal habeas relief as his claim has been procedurally defaulted and petitioner has failed to overcome such default.[9]

## V. CONCLUSION

IT IS THEREFORE ORDERED that the Petition is denied and this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

IT IS SO ORDERED

DATED: May 24, 2010

                                        /s/
                           Honorable Jacqueline Chooljian
                           UNITED STATES MAGISTRATE JUDGE

---

[9] As petitioner's claim is procedurally barred, the Court need not and does not address the parties' contentions regarding the merits of petitioner's claim. See Park v. California, 202 F.3d 1146, 1150 (9th Cir.) (district court properly refuses to reach merits of habeas petition if petitioner has defaulted on particular state's procedural requirements and is unable to demonstrate cause and prejudice or fundamental miscarriage of justice), cert. denied, 531 U.S. 918 (2000).